**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| The National Trust for Historic Preservation, et al., | No. CV-19-5008-PHX-MHB |
| Plaintiffs, | |
| vs. | |
| Debra Haaland, in her official capacity as Secretary of the Interior, et al., | **STIPULATED SETTLEMENT AGREEMENT** |
| Federal Defendants, | |
| and | |
| State of Arizona, | |
| Intervenor Defendant. | |

Plaintiffs, National Trust for Historic Preservation, Wilderness Society, and Sierra Club, and Federal Defendants, Debra Haaland in her official capacity as Secretary of the Interior, the United States Department of the Interior, Raymond Suazo in his official capacity as Arizona State Director of the Bureau of Land Management, and the United States Bureau of Land Management ("BLM") (collectively "the Parties") hereby enter into this Settlement Agreement for the purpose of resolving this lawsuit without further judicial proceedings. The Parties hereby state as follows:

WHEREAS, on March 5, 2018, BLM issued a Record of Decision approving the Sonoran Desert National Monument ("the Monument") Target Shooting Resource Management Plan Amendment ("RMPA") which identified approximately 435,700 acres of public lands as available to dispersed recreational target shooting ("target shooting");

WHEREAS, on August 22, 2019, Plaintiffs filed a Complaint for Declaratory and Injunctive Relief against the Federal Defendants alleging that the RMPA failed to include adequate measures to protect Monument objects, in violation of the Federal Land Policy and Management Act ("FLPMA") and Presidential Proclamation 7397 establishing the Monument; that BLM failed to make a reasonable and good faith effort to identify historic properties within the Monument in violation of the National Historic Preservation Act ("NHPA"); that BLM's "no adverse effect" determination is arbitrary and capricious in violation of the Administrative Procedure Act ("APA") and NHPA; and that BLM failed to analyze the decision's impacts to Monument objects and the effectiveness of corresponding mitigation measures in violation of the National Environmental Policy Act ("NEPA");

WHEREAS, on December 22, 2020 Plaintiffs filed a motion for summary judgment (Doc. 65) and memorandum in support (Doc. 65-1) in this case;

WHEREAS, following Plaintiffs' summary judgment filing, the Parties entered into negotiations for the following settlement to conserve BLM and judicial resources and resolve this lawsuit without further litigation; and

WHEREAS, the Parties, through their authorized representatives, and without any admission or adjudication of the issues of fact or law, have reached a settlement resolving the claims in this case;

THEREFORE, the Parties enter this Settlement Agreement ("Agreement"), and stipulate as follows:

**A.    Effective Date of the Agreement**

  1. The terms of this Agreement shall become effective upon entry of an Order by the Court approving the Agreement.

**B.    The Monument Resource Management Plan Land Use Planning Process and "Settlement Alternative"**

2.  BLM agrees to undertake a new land use planning process to consider amending the Monument Resource Management Plan ("RMP"). The new land use planning process will reconsider where and whether target shooting should be allowed inside the Monument and associated management actions. BLM will undertake and complete the land use planning process in accordance with FLPMA and any other applicable statutes and regulations, and will issue a new decision to amend or decline to amend the RMP.

3.  BLM agrees to issue the new decision contemplated by Paragraph 2 within 18 months of the Court's order approving this Agreement. BLM may obtain a one-time, six-month extension of this timeline by consent of the parties or by motion upon a show of good cause, which includes, but is not limited to, events outside the control of the BLM.

4.  As part of the land use planning process outlined in Paragraph 2, BLM agrees to analyze in detail an alternative (the "Settlement Alternative") that includes the following elements[1]:

    i.  Designated wilderness and lands with wilderness characteristics that are managed to protect those characteristics under the current RMPA would be unavailable for target shooting.

    ii. The area where the Komatke Trail is suspected to exist in the northwest area of the Monument, and an additional 0.5-mile buffer on the north side of the suspected location of the trail, would be unavailable to target shooting unless, prior to completion of the land use planning process, additional field work demonstrates the nonexistence of the trail, in which case the decision whether to allow target shooting in the area would be determined through a suitability analysis as discussed in Paragraph 4(v).

---

[1] This proposal is visually depicted on the attached map. *See* Exhibit A.

      iii.    The area south of Highway 238 from the western edge of the Monument boundary to the western edge of the South Maricopa Mountains Wilderness area boundary, and the area south of I-8 and west of the Table Top Wilderness, known as the Vekol Valley, would be unavailable to target shooting.

      iv.    The portion of the Monument that used to be part of the Barry M. Goldwater Air Force Range before it was reconveyed to the BLM (known as "Area A") would be unavailable to target shooting.

      v.    All areas not designated closed and unavailable to target shooting would be available for target shooting *unless* BLM's suitability analysis, which will inform the land use planning process, determines that: (1) Monument objects are located in the area and (2) target shooting is inconsistent with those objects' proper care and management.

      vi.    A mitigation and monitoring protocol designed to protect the Monument's objects will apply to those areas of the Monument where target shooting is allowed.

5. Pending adoption of a new decision, the current RMPA would remain in effect.

**C.  Dismissal of Case and Agreement Not to Sue**

6. The Parties agree that they will submit to the Court the accompanying joint motion seeking approval of the Agreement and dismissal of this case with prejudice in accord with Federal Rule of Civil Procedure 41. The Court shall retain jurisdiction solely for the purpose of enforcing the commitments in Paragraph 3. The Court's jurisdiction shall continue no later than completion of the planning process identified in Paragraph 2.

7. Plaintiffs agree that if BLM issues a decision approving a land use plan amendment that adopts the Settlement Alternative (described above) and as depicted in Exhibit A (map of the Settlement Alternative), they will not pursue, to the extent applicable, an administrative protest, petition for state director

review, appeal to the Interior Board of Land Appeals ("IBLA"), or judicial challenge to (1) the decision, or (2) any approved resource management plan amendment that complies with the Settlement Alternative (described above) and as depicted in Exhibit A (map of Settlement Alternative).

8. Plaintiffs further agree that if BLM issues a decision approving a land use plan amendment concerning target shooting that adopts the Settlement Alternative, they will not fund any other entity or person not a party to this Agreement to commence an administrative protest, petition for state review, or IBLA appeal or judicial challenge that would be barred by this Agreement if brought by Plaintiffs.

9. The Parties acknowledge that nothing in this Agreement limits or otherwise affects BLM's discretion to adopt the land use plan amendment of its choice among the alternatives (or a combination of the alternatives) analyzed.

10. The Parties acknowledge that nothing in this Agreement limits Plaintiffs' right to challenge BLM's final decision—in a separate administrative or judicial action challenging the validity of BLM's decision under the judicial review provisions of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706—if BLM does not adopt the Settlement Alternative.

D. **Additional Terms**

11. In the event of a dispute arising out of or relating to this Agreement, or if any of the Parties believes another Party has breached its obligations under this Agreement, the Party raising the dispute or alleging breach shall provide the other Parties written notice and a reasonable opportunity to resolve the dispute or cure the alleged breach. The Parties agree that they will meet and confer (either telephonically or in person) within 30 days of being notified of a dispute in a good faith effort to resolve any disputes or alleged breaches. As noted in Paragraph 6 above, the Court shall retain jurisdiction solely for the purpose of enforcing the commitments in Paragraph 3. The Parties agree, however, that no Party shall be subject to any claim for money damages as a result of a breach of this Agreement and that contempt of court as a remedy for any alleged breach of this Agreement will not be sought in this case. The Parties further

agree that the obligations are not enforceable through a judicial action for breach of contract, and that any challenge to the sufficiency of the new decision, including the BLM's compliance with the obligations set forth in Paragraph 4, may be brought only in a separate administrative or judicial action challenging the validity of BLM's decision regarding a land use plan amendment concerning target shooting under the judicial review provisions of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706.

12. This Agreement was negotiated for the purposes of avoiding future litigation. Nothing in this Agreement shall be construed or offered as evidence in any proceeding as an admission or concession of any wrongdoing, liability, or any issue of fact or law concerning the claims settled under this Agreement or any similar claims brought in the future by any other party. Except as expressly provided in this Agreement, none of the parties waives or relinquishes any legal rights, claims, or defenses it may have.

13. No part of this Agreement shall have precedential value in any litigation or in representations before any court or forum or in any public setting. This Agreement is executed for the purpose of settling Plaintiffs' Complaint, and nothing herein shall be construed as precedent having preclusive effect in any other context.

14. Without waiving any defenses or making any admissions of fact or law, Federal Defendants agree to pay Plaintiffs $110,000 to settle Plaintiffs' claim for attorneys' fees, costs, and expenses. Plaintiffs agree to accept the $110,000 from Federal Defendants in full satisfaction of any and all claims, demands, rights, and causes of action for any and all attorneys' fees, costs, and expenses Plaintiffs reasonably incurred in connection with this litigation through the signing of this Agreement. The United States may offset the payment amount to account for any delinquent debts owed by the Payee(s) to the United States pursuant to 31 U.S.C. §§ 3711, 3716. By this Agreement, Federal Defendants do not waive any right to contest fees, costs, or expenses claimed by Plaintiffs or Plaintiffs' counsel in any future litigation or continuation of the present action. Within fourteen (14) days after the effective date of this Agreement, Plaintiffs' counsel will provide the following information necessary for

Federal Defendants to process the disbursement: the payee's address, the payee's bank account number, the account type, the name of the payee's bank, the bank routing transit number, and the payee's tax identification number. Federal Defendants agree to submit all necessary paperwork for the processing of the attorneys' fees award within fourteen (14) days from receipt of the necessary information from the Plaintiffs or from the dismissal of the lawsuit, whichever is later.

15. So long as the payee receives payment from Federal Defendants, as provided in Paragraph 14, Plaintiffs and their counsel, assigns, executors, and administrators agree to forever release, abandon, waive, and discharge the United States and Federal Defendants from any and all claims, demands, damages, causes of action or suits at law or equity to recover fees, costs, or expenses in any way related to this litigation.

16. Nothing in this Agreement shall be interpreted as, or shall constitute, a requirement that Federal Defendants are obligated to pay any funds exceeding those available or take any action in contravention of the Anti-Deficiency Act, 31 U.S.C. § 1341, or any other applicable appropriations law.

17. The Parties agree that this Agreement was negotiated in good faith and that it constitutes a settlement of claims that were disputed by the Parties.  This Agreement contains all the terms of agreement between the Parties concerning the Complaint, and is intended to be the final and sole agreement between the Parties with respect thereto.  The Parties agree that any prior or contemporaneous representations or understanding not explicitly contained in this written Agreement, whether written or oral, are of no further legal or equitable force or effect.

18. The undersigned representatives of each party certify that they are fully authorized by the party or parties they represent to agree to the terms and conditions of this Agreement and do hereby agree to the terms herein.  Further, each party, by and through its undersigned representative, represents and warrants that it has the legal power and authority to enter into this Agreement and bind itself to the terms and conditions contained in this Agreement.

Date Signed: April 14, 2022

PARTY REPRESENTATIVES SIGNATURES

TODD KIM
Assistant Attorney General
Environment & Natural Resources Division

*/s/ Leilani Doktor*
LEILANI DOKTOR, admitted to HI Bar
United States Department of Justice
150 M Street NE
Washington, D.C. 20002
Tel.: (202) 305-0447
Fax: (202) 305-0506
leilani.doktor@usdoj.gov

*/s/ Clare Boronow*
CLARE BORONOW, admitted to MD Bar
United States Department of Justice
999 18th St.
South Terrace, Suite 370
Denver, CO 80202
Tel: (303) 844-1362
Fax: (303) 844-1350
clare.boronow@usdoj.gov

*Attorneys for Federal Defendants*

/s/ Matthew K. Bishop
Matthew K. Bishop, *admitted PVH*
Montana Bar No. 9968
Western Environmental Law Center
103 Reeder's Alley
Helena, Montana 59601
Tel: 406-324-8011
bishop@westernlaw.org

| | |
|---|---|
| 1 | /s/ Kelly Nokes |
| 2 | Kelly E. Nokes, *admitted PHV* |
| | Colorado Bar No. 51877 |
| 3 | Western Environmental Law Center |
| 4 | P.O. Box 218 |
| | Buena Vista, Colorado 81211 |
| 5 | Tel: 575-613-8051 |
| 6 | nokes@westernlaw.org |

*Counsel for the Plaintiffs*